UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| MARK SCOTT FELTMEYER, ) | |
| ) | |
| Plaintiff, ) | Case No. 05-1687 (JWB) |
| v. ) | |
| ) | Complaint and |
| N.V.E., INC., d/b/a NVE ) | Demand for Jury Trial |
| PHARMACEUTICALS, INC., a New Jersey ) | |
| Corporation, and HEALTHWORKS ) | |
| INTERNATIONAL, L.L.C., a Louisiana ) | |
| Corporation, ) | |
| ) | |
| Defendants. | |

## COMPLAINT

NOW COMES the Plaintiff, MARK SCOTT FELTMEYER by and through his attorneys, KENNETH B. MOLL & ASSOCIATES, LTD., and BURNS, LEBROCQ, WOLF & ASSOCIATES, and complaining of the Defendants, N.V.E., Inc., d/b/a/ NVE PHARMACEUTICALS, INC., a New Jersey Corporation, and HEALTHWORKS INTERNATIONAL, L.L.C., a Louisiana Corporation, states as follows:

### I. PARTIES

### A. PLAINTIFF

1. Plaintiff, MARK SCOTT FELTMEYER ("Plaintiff"), is a citizen of Freeport, Illinois.

2. Plaintiff purchased and ingested the ephedra-containing product, "Stacker 2", manufactured by N.V.E. INC., d/b/a N.V.E. PHARMACEUTICALS, INC. ("NVE").

3. Plaintiff purchased and ingested the ephedra-containing product, "Truckers Luv It", manufactured by HEALTHWORKS INTERNATIONAL, L.L.C. ("Healthworks").

4. On or about June 19, 2003, Plaintiff suffered a heart attack as the result of ingesting the ephedra-containing products, "Stacker 2" and "Truckers Luv It".

## B. DEFENDANTS

5. Defendant, N.V.E. INC., d/b/a N.V.E. PHARMACEUTICALS, INC., is a New Jersey Corporation with its principal place of business located at 15 Whitehall Road, Andover, New Jersey, 07821.

6. Defendant, HEALTHWORKS INTERNATIONAL, L.L.C., is a Louisiana Corporation with its principal place of business located at 204 Fair Avenue, Winnsboro, Louisiana, 71295.

7. At all relevant times Defendants did research, develop, manufacture, create, design, test, label, package, distribute, supply, market, sell, promote, and/or advertise ephedra-containing dietary products, including "Stacker 2" and "Truckers Luv It", the specific products complained-of herein.

## II. JURISDICTION AND VENUE

8. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000 exclusive of interest and costs, and

KENNETH B. MOLL

because the Plaintiff is a citizen of the State of Illinois and the Defendants are incorporated in the States of New Jersey and Louisiana.

9.  This Court has personal jurisdiction over N.V.E. because it is a New Jersey corporation.

10. This Court has personal jurisdiction over Healthworks pursuant to the New Jersey Long-Arm Statute, N.J. Rule 4:4-4(b)(1), because Healthworks was doing business in New Jersey such that it could anticipate being hauled into this Court based on personal jurisdiction.

11. Venue is proper in this District pursuant to 28 U.S.C. §1391(a)(2) and (3) and (c).

### III. NATURE OF THE DEFENDANTS' WRONGFUL CONDUCT

#### A. FACTUAL BACKGROUND

12. In 4000 BC, Ma Huang (ephedra), a Chinese herb, was used as a cold remedy usually ingested in tea made from the ephedra plant for persons suffering short-term inflammation of the lungs due to common cold and asthma problems. Ma Huang was usually recommended for short-term use.

13. Ephedra sinica, also known as Ma Huang, Mormon Tea, and now known on the streets as Herbal Ecstasy, is the plant most commonly used as a source of ephedra. Ma Huang is a popular dietary supplement across the world and has been used in Chinese medicine for over 5,000 years.

14. Ephedra naturally occurs in several different species of botanical plants. Ephedra contains "ephedrine alkaloids," which are naturally occurring chemical stimulants. Ephedrine, pseudoephedrine, methylephedrine, norephedrine, and norpseudoephedrine are all different types of ephedrine alkaloids. Although the proportions of the different types of ephedrine alkaloids in botanical plants vary from one plant species to another, the most common ephedrine alkaloids that are present in ephedra are ephedrine and pseudoephedrine. Norephedrine is an ephedrine alkaloid also known as phenylpropanolamine, which was recently banned by the FDA.

15. The synthetic form of ephedrine is considered to be a drug and is heavily regulated by the FDA, while the natural form of ephedrine that is present in ephedra is considered to be a dietary supplement and therefore is not heavily regulated by the FDA under the Dietary Supplement Health and Education Act of 1994. Both ephedrine and ephedra are known to stimulate the sympathetic nervous system and cause vasoconstriction of the blood vessels. They also dilate bronchial tubes, elevate blood pressure, and increase heart rate.

### B. WRONGFUL CONDUCT

16. Pursuant to the Dietary and Supplement Health and Education Act of 1994, manufacturers of dietary supplements are responsible to ensure the safety and integrity of their products, specifically ephedra-containing products such as "Stacker 2" and "Truckers Luv It".

17. The Defendants engaged in a diverse and wide-sweeping marketing and over-promotion to sell its ephedra-containing dietary product. The Defendants misinformed and misled Plaintiff and consumers about its ephedra-containing dietary product, and failed to protect Plaintiff and users from serious dangers, which Defendants knew or should have known resulted from the use of their ephedra-containing dietary products.

18. The Defendants' promotions included, but were not limited to, claims that their ephedra-containing dietary product would allow Plaintiff to stimulate fat loss, preserve lean muscle mass, increase energy, and increase metabolism.

### C. CHRONOLOGY

19. In 1994 ephedra-containing dietary supplements were sold over-the-counter worldwide, with little oversight by the Food and Drug Administration, FDA.

20. In August 2002, the Justice Department began conducting criminal investigations into the safety and effects of ephedra-containing dietary supplements.

21. In May 2003, Illinois became the first state to ban the use of ephedra-containing dietary supplements.

22. In October and November 2003, ephedra-containing dietary supplements were banned in California and New York, respectively.

KENNETH B. MOLL

23. Finally, on December 30, 2003, the U.S. Food and Drug Administration (FDA) announced a nationwide ban of the herbal weight-loss supplement ephedra as a result of concerns of its serious and adverse effects on health.

24. On April 12, 2004, the FDA ban became effective making sales of ephedra-containing diet supplements illegal.

### D. SERIOUS AND ADVERSE EFFECTS OF EPHEDRA

25. Ephedra-containing dietary products have been strongly associated with substantial increases in blood pressure, heart rate, and arrhythmia.

26. Ephedra-containing dietary products cause other amphetamine-like effects such as nervousness, hyperactivity, increased energy, anxiety, increased insomnia, tremor, dry mouth and a speedy feeling.

27. Ephedra-containing dietary products are potent central nervous stimulants and vasoconstrictors that cause adverse health risks, including death, intracranial hemorrhage, hypertension, palpitations, tachycardia, arrhythmias, dysrhythmias, myocardial infarctions, seizures, tremors, psychosis, nervousness, headaches, syncope, vertigo, strokes, atrial fibrillation, and gastrointestinal distress.

28. Defendants have failed to formulate, manufacture, design, and compound their products, so as not to constitute an unreasonable risk of death, intracranial hemorrhage, heart attack, seizure, stroke, atrial fibrillation, and psychosis.

29. Defendants have failed to properly test the purity, quality, quantity, uniformity, potency, absorption, bioavailability, distribution, metabolic mechanisms, elimination rates, pharmacodynamics and pharmacogenetics of their ephedra-containing dietary products.

30. The warning labels for the ephedra-containing dietary products did not adequately warn of the inherent dangers and risks of ephedra-containing dietary products, and failed to warn with an intensity commensurate with the existent danger. The warnings were inadequate because they failed to warn Plaintiff and over-the-counter consumers of the risks of death, intracranial hemorrhage, heart attack, arrhythmias, stroke, seizure, atrial fibrillation, and psychosis.

31. The product warning labels were inadequate for failure to warn of additive, synergistic, or potentiated effect of ephedra when combined with sympathomimetic medications or foods.

## IV. CLAIMS FOR RELIEF

### COUNT I
### STRICT LIABILITY PURSUANT TO
### §2 OF THE RESTATEMENT (THIRD) OF TORTS: PRODUCT LIABILITY

32. Plaintiff repeats and realleges, as if fully set forth herein, each and every allegation contained in the above paragraphs and further alleges:

33. Defendants are liable to Plaintiff pursuant to §2 of the Restatement of Torts (Third): Product Liability or similar state law in that:

    a. The Defendants were and are engaged in the business of manufacturing, promoting, marketing, advertising, distributing, supplying and selling the ephedra containing dietary products

"Stacker 2" and "Truckers Luv It", which Defendants sold and distributed in the State of New Jersey of which Defendant N.V.E. is incorporated.

b. The Plaintiff was using "Stacker 2" and "Truckers Luv It" in a manner for which they were intended or in a reasonably foreseeable manner.

c. The Defendants' "Stacker 2" and "Truckers Luv It" were expected to and did reach the Plaintiff and similarly situated consumers without substantial change in its condition as manufactured and sold by the Defendants.

d. The Defendants knew or should have known that the foreseeable risks associated with "Stacker 2" and "Truckers Luv It" manufactured and distributed by the Defendants exceeded the benefits of that good.

e. The Plaintiff was not aware of, and could not have reasonably discovered the dangerous nature of "Stacker 2" and "Truckers Luv It".

f. "Stacker 2" and "Truckers Luv It", manufactured and distributed by the Defendants, caused or subjected the Plaintiff to suffer a heart attack upon consumption and therefore constitutes products unreasonably dangerous for normal use due to their defective design, their defective manufacture and the Defendants' misrepresentations and inadequate facts disclosed to the Plaintiff.

g. As a direct and proximate result of the Defendants' design, manufacture, promotion and sale of "Stacker 2" and "Truckers Luv It":

    I. Plaintiff suffered serious and grievous personal injuries;

    ii. Plaintiff incurred economic loss, including loss of earnings and loss of earning capacity; and

       iii.    Plaintiff was required to expend fair and reasonable expenses for necessary health care, attention and services.

  h.    The Defendants, therefore, are strictly liable to the Plaintiff.

## COUNT II
## NEGLIGENCE

34.    Plaintiff repeats and realleges, as if fully set forth herein, each and every allegation contained in the above paragraphs and further alleges:

35.    It was the duty of the Defendants to use reasonable care in the manufacture, promotion, marketing, advertising, distribution and sale of "Stacker 2" and "Truckers Luv It".

36.    Contrary to their duty, the Defendants were and are guilty of one or more of the following careless and negligent acts and/or omissions, in that it:

  a.    Failed to adequately and properly test and inspect "Stacker 2" and "Truckers Luv It" so as to ascertain whether or not they was safe and proper for the purpose for which they were designed, manufactured and sold;

  b.    Failed to utilize and/or implement a reasonably safe design in the manufacture of "Stacker 2" and "Truckers Luv It";

  c.    Failed to manufacture "Stacker 2" and "Truckers Luv It" in a reasonable and safe condition for which they were intended;

  d.    Failed to adequately and properly warn the Plaintiff and others similarly purchasing "Stacker 2" and "Truckers Luv It" of the risk of adverse side effects when used in a manner for which they were intended;

  e.    Failed to adequately and properly label "Stacker 2" and "Truckers Luv It" so as to warn the Plaintiff of the risk of adverse side effects;

  f.  Manufactured "Stacker 2" and "Truckers Luv It", which constituted a hazard to health;

  g.  Manufactured "Stacker 2" and "Truckers Luv It", which caused adverse side effects;

  h.  Were otherwise careless and negligent.

37. As a direct and proximate result of one or more of the foregoing unsafe and defective conditions of the Defendants' products, the Plaintiff sustained severe injuries.

## COUNT III
## VIOLATIONS OF NEW JERSEY UNFAIR TRADE PRACTICES ACT
## N.J. STAT. ANN. § 56:8-1 et seq.

38. Plaintiff repeats and realleges, as if fully set forth herein, each and every allegation contained in the above paragraphs and further alleges:

39. Defendants engaged in unfair competition or unfair or deceptive acts or practices in violation of the New Jersey Unfair Trade Practices Act, N.J. Stat. Ann. §56:8-1 et seq., when:

  a.  Defendants, through advertising, warranties, and other express representations, represented that "Stacker 2" and "Truckers Luv It" had benefits or characteristics that they did not actually have.

  b.  Defendants falsely represented that "Stacker 2" and "Truckers Luv It" were of a particular standard or quality when they were not.

  c.  Defendants, when advertising "Stacker 2" and "Truckers Luv It", concealed and suppressed facts material to the true characteristics, standards and quality of "Stacker 2" and "Truckers Luv It".

40. Defendants' deceptive practices were specifically designed to induce the Plaintiff and others similarly situated to buy "Stacker 2" and "Truckers Luv It".

41. As a direct and proximate result of one or more of the foregoing unsafe and defective conditions of the Defendants' products, the Plaintiff sustained severe injuries.

## COUNT IV
## BREACH OF EXPRESS WARRANTY

42. Plaintiff repeats and realleges, as if fully set forth herein, each and every allegation contained in the above paragraphs and further alleges:

43. Defendants expressly warranted to the Plaintiff, by and through statements made by the Defendants or the Defendants' authorized agents or sales representatives, orally and in publications, and on bottles of the product and in other written materials that "Stacker 2" and "Truckers Luv It", which the Defendants manufactured, promoted, marketed, advertised, distributed and sold to the Plaintiff, were of merchantable quality, fit and safe for human use and otherwise not injurious to Plaintiff's health and well-being.

44. Plaintiff, in reasonable reliance upon Defendants' guarantees and express warranties, purchased and used "Stacker 2" and "Truckers Luv It".

45. The "Stacker 2" and "Truckers Luv It" consumed by the Plaintiff and others similarly situated were unsafe, unmerchantable, unfit for human use and otherwise injurious to the Plaintiff, notwithstanding the Defendants' guarantees and express warranties.

46.     The Defendants breached their express warranties in that "Stacker 2" and "Truckers Luv It" were not of merchantable quality, were not fit and safe for human use, and were injurious to the Plaintiff's health and well-being.

47.     As a direct and proximate result of one or more of the foregoing unsafe and defective conditions of the Defendants' products, the Plaintiff sustained severe injuries.

## COUNT V
## BREACH OF IMPLIED WARRANTY

48.     Plaintiff repeats and realleges, as if fully set forth herein, each and every allegation contained in the above paragraphs and further alleges:

49.     Defendants impliedly warranted to the Plaintiff and others similarly situated that "Stacker 2" and "Truckers Luv It" were of merchantable quality, fit and safe for human use and otherwise not injurious to the Plaintiff's health and well-being.

50.     Plaintiff, in reasonable reliance upon Defendants' guarantees and implied warranties, purchased and used "Stacker 2" and "Truckers Luv It".

51.     The "Stacker 2" and "Truckers Luv It" consumed by the Plaintiff and others similarly situated were unsafe, unmerchantable, unfit for human use and otherwise injurious to the Plaintiff, notwithstanding the Defendants' guarantees and implied warranties.

52.     The Defendants breached their implied warranties in that "Stacker 2" and "Truckers Luv It" were not of merchantable quality, were not fit and safe for human use, and were injurious to the Plaintiff's health and well-being.

53.     As a direct and proximate result of one or more of the foregoing unsafe and defective conditions of the Defendants' products, the Plaintiff sustained severe injuries.

## V. PRAYER FOR RELIEF

WHEREFORE, Plaintiff, MARK SCOTT FELTMEYER, by and through his attorneys, KENNETH B. MOLL & ASSOCIATES, LTD., and BURNS, LEBROCQ, WOLF & ASSOCIATES, prays for relief against Defendants, N.V.E., Inc., d/b/a/ NVE PHARMACEUTICALS, INC., and HEALTHWORKS INTERNATIONAL, L.L.C. as follows:

1. For general damages in a sum in excess of the jurisdictional minimum of this Court;

2. Medical, incidental, hospital, and service expenses according to proof;

3. Loss of earnings and earning capacity according to proof;

4. Prejudgement and post judgement interest as provided by law;

5. Compensatory damages in excess of the jurisdictional minimum of the Court, according to proof;

6. Consequential damages in excess of the jurisdictional minimum of the Court, according to proof;

7. Punitive and exemplary damages;

8. Attorneys' fees, expenses, and costs of this action; and

9. Such further relief as this Court deems necessary, just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial on all claims so triable in this action.

RESPECTFULLY SUBMITTED,

By: William E. Norris(WN2069)

BURNS, LEBROCQ, WOLF & ASSOCIATES
485 Route 1 South
Building A, Suite 350
Iselin, New Jersey 08830
Local Counsel for Plaintiff

Nizam Arain(NA XXXX)
Victoria Dizik Teremenko(VTXXXX)
**KENNETH B. MOLL & ASSOCIATES, LTD.**
Three First National Plaza
50TH Floor
Chicago, Illinois 60602
TEL: 312.558.6444
FAX: 312.558.1112
www.kbmoll.com
National Counsel for Plaintiff